UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CAROLYN SHENK,

               Plaintiff,

      -against-                          **MEMORANDUM AND ORDER**

SOCIAL SECURITY ADMINISTRATION,        12-CV-4370 (SLT)
MICHAEL ASTRUE; MISS BIONDADILLDO,
FRANCIS, CABAN, CHAN, *et al.*,

               Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

       Plaintiff Carolyn Schenk ("Plaintiff"), proceeding *pro se*, brings this action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12101 *et seq.*; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; and other provisions, asserting that defendants terminated her Supplemental Security Income ("SSI") without due process or just cause. Although Plaintiff's two-page complaint (the "Complaint") does not specify the relief Plaintiff seeks, Plaintiff filed a motion for a preliminary injunction, temporary restraining order and stay along with the Complaint. For the reasons set forth below, Plaintiff's motion for preliminary injunctive relief is denied.

## BACKGROUND

       On August 24, 2012, Plaintiff faxed her Complaint and other papers relating to the instant action to the Clerk's Office for the United States District Court of the Eastern District of New York. The papers included (1) a request to proceed *in forma pauperis*; (2) a motion for a temporary restraining order and preliminary injunction, along with two proposed orders to show cause; and (3) a letter dated August 20, 2012, addressed to Chief Judge Carol Amon, requesting permission to commence a new action via facsimile. The letter stated, among other things, that Plaintiff was



suffering from an unspecified "[l]ife threatening physical condition" that rendered her "homebound and disabled," and that she had been "given faxing privileges due to [her] life threatening condition by every other court in New York and California."

By order dated August 30, 2012, Chief Judge Amon granted Plaintiff permission to commence this action via facsimile. However, that order stated:

> Plaintiff is granted permission to file documents by facsimile in this single instance only. Plaintiff does not have permission to file any further documents in this action by facsimile, or in any other action before the Court.

This case was then assigned to this Court.

### *Plaintiff's Complaint*

Plaintiff's Complaint names six defendants: the Social Security Administration ("SSA"); the Commissioner of Social Security, Michael Astrue; and four individuals – defendants Biondadilldo, Francis, Caban and Chan (collectively, the "Individual Defendants") – all of whom are presumed to be employees of the SSA. The first paragraph of the Complaint specifically states that Plaintiff is "filing this complaint for violations of the Americans with Disabilities Act, 1990 Title II . . . and Section 504 of the Rehabilitation Act and all disability laws collectively." This paragraph also suggests that Plaintiff may be seeking relief for violations of Plaintiff's federal and New York State Constitutional rights, violations of Plaintiff's "[c]ivil and human rights" and for "[o]bstruction of justice."

Although the factual allegations in Plaintiff's complaint are unclear, one can glean the following facts from the allegations and the exhibits attached to the Complaint. For some time prior to 2012, Plaintiff had been receiving SSI from the SSA. Early in 2012, Plaintiff was contacted by the SSA, who threatened to suspend her SSI unless Plaintiff provided certain

"information . . . needed to re-evaluate [Plaintiff's] claim." Plaintiff's Affidavit in Support of Complaint ("Pl. Aff."), Ex. A (Letter to Plaintiff from Elizabeth B. Bake, Associate Commissioner of SSA's Office of Public Inquiries). Plaintiff provided "[e]verything that was needed." Complaint at 2. In late March and early April 2012, Plaintiff received correspondence from the SSA confirming that the agency had received the necessary information and was restoring Plaintiff's SSI. Pl. Aff. at Ex. A, B, & C.

A few months later, however, Plaintiff's SSI was discontinued. The Complaint implies that Plaintiff has not received SSI payments due at the beginning of July and August 2012. Complaint at 1. The Complaint further implies that Plaintiff did not receive adequate notice before her benefits were discontinued, alleging that Plaintiff received a letter "written over in some 'serial killer' RED BOLD CRAZY, 'SERIAL KILLER' THREATENING MARKER," but "not the official termination or stopping which . . . Plaintiff never received." *Id.* at 2 (emphasis in original).

The Complaint charges that defendants Francis and Biondadilldo were responsible for writing the threatening red messages and for the decision to discontinue Plaintiff's benefits "without merit and just cause." *Id.* In addition, the Complaint alleges that Plaintiff was "completely ignored and abused" by defendants, asserting that Biondadilldo, Caban and Francis, all screamed at her; that Chan ignored Plaintiff's requests for a return telephone call; and that Plaintiff was subjected to "harassment and excessive questioning." *Id.* at 1-2. However, while the Complaint alludes to "ADA violations," *id.* at 1, the only act committed by defendants which is specifically alleged to have violated the ADA is the sending of the threatening red messages. The Complaint alleges that these messages were sent to "[s]care, [i]ntimidate and threaten the

3

disabled homebound plaintiff in violation of the Americans with Disabilities Act, City and State and federal disability [l]aws collectively." *Id.* at 2 (internal quotations omitted, brackets added).

### *Plaintiff's Motion for Injunctive Relief*

Plaintiff's motion for a preliminary injunction, temporary restraining order and stay ("Plaintiff's Motion") principally seeks immediate restoration of Plaintiff's SSI benefits pending resolution of this action. However, one of the two proposed orders to show cause – entitled, "Order to Show Cause Stay of Benefits 'Continuing'" and docketed as Document #3 – requests additional relief. This proposed order would "permanently move the file of the disabled plaintiff to another venue, so that the discriminatory parties have no access to her file" and would order the "agency/office" to which Plaintiff's file was transferred to "compl[y] with the ADA and provide the services and goods, and accommodate [Plaintiff's] disability by alternative methods and provide 'primary consideration' under . . . 504 . . . and [T]itle II."

This Court did not sign either of Plaintiff's proposed orders and declined to grant a temporary restraining order or stay. Rather, this Court entered an Order to Show Cause dated August 30, 2012, which only (1) granted Plaintiff's motion to proceed *in forma pauperis*; (2) directed the Clerk of Court to serve the Order to Show Cause and a copy of the Complaint upon the defendants; (3) directed the defendants to file any written responses by September 7, 2012; and (4) directed the parties to appear before the Court on September 14, 2012. That order was subsequently supplemented by a second order, which granted Plaintiff permission to appear by telephone at the September 14 proceeding. The Court did not address the issue of whether Plaintiff should be permitted to file her papers via facsimile.

On September 7, 2012, Assistant United States Attorney ("AUSA") Candace Appleton filed a response to Plaintiff's Motion on behalf the SSA, Commissioner Astrue and the four Individual Defendants in their official capacities. *See* Letter to Hon. Sandra L. Townes from AUSA Candace Appleton, dated Sept. 7, 2012 (the "Response") at 1.[1] That Response noted that "SSI is a . . . means-tested assistance program," and that only people meeting certain "resource and income limits" are eligible for SSI benefits. Response at 2.[2] The Response further implied that, sometime in early 2012, the Internal Revenue Service ("IRS") alerted SSA that Plaintiff might have financial accounts containing resources in excess of the SSI limits. *Id.* at 3. According to the Response, the SSA requested information relating to these financial accounts in early 2012, but Plaintiff never provided any information. *Id.*

The Response expressly rebutted Plaintiff's claim that she never received adequate notice of SSA's plans to discontinue her SSI benefits. The Response claimed that Plaintiff was sent a Notice of Planned Action dated June 8, 2012, and attached a copy of that document (hereinafter, the "June 8 Notice" or "Notice"). *See* Response, Ex. A. The Notice apprised Plaintiff that the SSA intended to stop her SSI in July 2012, but also informed Plaintiff that she had 60 days from the day after she received the Notice in which to file an appeal. In addition, the Notice informed Plaintiff that the SSA would not stop her SSI if it received the appeal within 10 days after the day

---

[1] Since none of the Individual Defendants have yet been served with the Complaint, the United States Attorney's Office has not been authorized to represent any of the Individual Defendants in their personal capacities.

[2] According to the Response, the resource limit for an individual without an eligible spouse is $2,000. Response at 2 (citing 42 U.S.C. §1382(a)(3); 20 C.F.R. §416.1205).

on which Plaintiff received the Notice. The Notice specified the manner in which the appeal was to be brought, stating:

> You can file an appeal with any Social Security Office. You must request the appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2, which is available on our website at www.socialsecurity.gov on the Internet. You can also contact us by phone, by mail, or come into the office to obtain the form. If you need assistance, we can help you fill out the form.

The Response alleges that Plaintiff never filed an appeal and, therefore, never exhausted her administrative remedies. Asserting that 42 U.S.C. §405(g) is "the exclusive remedy for seeking review of a decision of the Commissioner" and that exhaustion of administrative remedies is a prerequisite to bringing an action under §405(g), the Response argues that Plaintiff cannot sue under §405(g) because she has not exhausted her administrative remedies. Response at 4. Finally, the Response implies that Plaintiff cannot bring an ADA or Rehabilitation Act claim against the SSA because she has not complied with the "SSA's procedures for such complaints." *Id.*

## *Plaintiff's Replies*

Although this Court's August 30, 2012, order did not require Plaintiff to file a reply, Plaintiff mailed three submissions between September 10, 2012 – the day Plaintiff received the Response – and September 14, 2012. The first submission (hereinafter, the "First Reply") is entitled "Opposition to Motion received on September 10, 2012," and consists of 14 consecutively numbered pages, the last 10 of which are exhibits. The second submission (the "Second Reply") consists of the first two pages of a Notice of Planned Action which was sent to Plaintiff on March 8, 2012, and which advised Plaintiff that her SSI would be stopped

"beginning April 2012." The third submission (the "Third Reply"), which was received in the Clerk's Office on September 14, 2012, consists of a five-page, unsigned letter and approximately 24 pages of attachments.[3]

These submissions, read together, clarify some of the allegations in Plaintiff's Complaint. According to the First Reply, the SSA contacted Plaintiff in January 2012 concerning a "[r]ecertification" of her SSI. First Reply at 1. At some time either during or prior to this recertification, the IRS provided SSA with information suggesting that Plaintiff had a securities account with First Clearing LLC and a retirement account with Prudential Financial Inc. *Id.* at 1, 5. On February 15, 2012, the SSA sent Plaintiff a letter stating that SSA had "received information from the IRS about accounts . . . which may affect . . . eligibility" and demanding that she provide further information concerning her eligibility for SSI. Third Reply at 10. Although Plaintiff has only provided the first page of the SSA's February 15 letter, that page states that Plaintiff has "an appointment" with the SSA. *Id.*

Plaintiff informed the SSA, via telephone and in writing, that she was homebound and needed "a telephone interview," but received no responses. First Reply at 1. Finally, in February or March 2012, Plaintiff was able to reach defendant Caban, who agreed to conduct a telephone interview. *Id.* According to Plaintiff, Caban "grilled" Plaintiff about other issues before reviewing the information provided by the IRS. *Id.* Caban was ultimately convinced that this information did not establish that the accounts contained amounts exceeding the resource limits

---

[3]The attachments are numbered independently of the five-page letter, using numbers in a circle. Some of these documents are also identified as Exhibits. For example, page 3 of the attachments is also marked "Exh. R." For ease of reference, this Court will refer to these attachments as exhibits to the Third Reply and will identify them by page numbers that are circled on the documents.

for SSI and told Plaintiff, "I am done with you." *Id.*[4] Thereafter, defendant Francis called Plaintiff and subjected Plaintiff to "another grand jury grilling and excessive questioning," asking her "questions that [had] nothing at all to do with the IRS paper." *Id.* at 2.

On March 28, 2012, the SSA informed Plaintiff that she was eligible for SSI for April 2012 because she had "furnished . . . the information we asked for." Exhibits to Third Reply at 3. However, in mid-May 2012, Plaintiff received a letter alluding to the information received from the IRS and demanding additional documentation. This letter – the first page of which is included in the Exhibits to the Third Reply as page 15 – appears to be a copy of a letter originally sent to Plaintiff on March 21, 2012. However, the letter has been modified by crossing out "March 21, 2012," and substituting "May 9, 2012;" by adding the phrase, "RESPOND BY 5/25/12," just below the date; and by adding the words, "FINAL REQUEST" to the top. All of these modifications appear to have been made with a thick marker.

Plaintiff, who characterizes these modifications as having been made in "RED SERIAL KILLER WRITING," alleges that these amendments were the handiwork of defendant Bondadilldo, a Manager, and/or defendant Francis. Third Reply at 3 (emphasis in original). According to Plaintiff, Bondadilldo had previously denied benefits to Plaintiff, only to have her determination reversed by a judge. First Reply at 1. Plaintiff alleges that Bondadilldo "was

---

[4]It is unclear what convinced Caban. Plaintiff has provided the Court with an IRS document reflecting that, on three occasions in 2009-2010, financial institutions paid Plaintiff amounts of less than $100. First Reply at 5. This document does not purport to provide the account balances, if any, in these accounts. Plaintiff alleges that she contacted at least one of the financial institutions identified by the IRS and was told that there were "zero accounts that matched the information provided" to Plaintiff by the SSA. *Id.* at 3. It unclear, however, whether the institutions' records showed no accounts bearing the account numbers provided by the IRS or showed that the accounts were empty and/or closed, and Plaintiff provides no documentation from the financial institutions.

8

retaliating for the past," Third Reply at 2, by "harassing the disabled beneficiary and stopping and blocking and tampering with [Plaintiff's] governmentally issued funds." First Reply at 1. Plaintiff claims that she "has been put through hell" by Bondadilldo for reasons having "nothing to do with the 3 figures listed [by the IRS] . . . but all about discrimination." *Id* at 2.

Plaintiff asserts that she never received the Notice advising her that SSA planned to discontinue her benefits in July 2012. While the Third Reply attaches a poorly reproduced, partially legible copy of this Notice, Exhibits to Third Reply at 11, this appears to be a copy of the Notice attached to the Response. Moreover, Plaintiff has written, "I did not get this," on the copy attached to the Third Reply. *Id.* (emphasis in original).

Plaintiff asserts that she filed numerous appeals of the SSA's determinations. She has provided some evidence to substantiate this, albeit mostly in the form of fax receipts with cryptic, largely illegible, handwritten notations regarding what was faxed. Although Plaintiff has provided copies of two "Request for Reconsideration" forms, one of these forms is entirely illegible, *id.* at 14, and the other is largely illegible except for the date: 5/24. *Id.* at 13.

Most of the evidence relating to Plaintiff's appeals pertains to the period before June 8, 2012. Indeed, only three of the documents provided by Plaintiff even arguably establish that Plaintiff filed an appeal after June 8, 2010. The first is a completed "Request for Hearing by Administrative Law Judge" form, dated either May 22 or August 22, 2012. Exhibits to Third Reply at 12. This form does not specifically identify the SSA determination to which it relates, but states:

> I have complied w/ all requests. All accts were closed & under 2,000. I asked for several appeals and reconsid. - ignored.

However, both the name and social security at the top of the form are written in such a way as to be entirely illegible.

The remaining two documents are fax receipts, sent June 19 and August 1, 2012. *Id.* at 17-18. Plaintiff has added handwritten notes to indicate that these transmissions pertained to appeals, but these notes are too cryptic and illegible to permit a determination of what was sent.

### *The Hearing and Subsequent Events*

On September 14, 2012, this Court held a hearing on Plaintiff's motion for injunctive relief. This Court questioned AUSA Appleton regarding the inconsistency between the March 28, 2012, letter stating that the SSA had received the information requested and the May 9, 2012, letter demanding that same information. AUSA Appleton represented to the Court that the March 28, 2012, letter was issued based upon Plaintiff's promise to provide additional documentation. However, according to AUSA Appleton, Plaintiff reneged on that promise, resulting in the issuance of the May 9, 2012, letter.

Hoping to work a resolution of this matter, this Court asked Plaintiff if she had obtained documentation from the financial institutions relating to the status of her accounts and had provided that information to the SSA. Plaintiff represented that she had telephoned one of the two financial institutions, but readily admitted that she had not obtained any documentation from even that institution. She argued that her failure to do so did not matter, because the amounts paid to her were not in excess of the $2,000 resource limit. However, the information provided to the SSA by the IRS did not establish how much was in the accounts, only how much was paid to Plaintiff by the financial institutions in 2009 and 2010.

The Court also sought to determine whether Plaintiff had ever appealed from the June 8 Notice. The Court acknowledged that Plaintiff had provided a copy of a "Request for Hearing by Administrative Law Judge" form, dated either May 22 or August 22, 2012, but noted that both the name and social security at the top of the form were illegible. Plaintiff represented that these were illegible because of a wrist injury, but this Court noted that other portions of the document were entirely legible.

This Court did not rule on Plaintiff's motion for injunctive relief at the close of the hearing, but granted Plaintiff an additional two weeks in which to submit proof that she had appealed from the June 8 Notice. However, the Court also advised Plaintiff that, if she had not received a copy of the Notice until she received Defendants' Response, she should immediately file a written appeal with the SSA, enclosing a letter indicating when she first received the Notice.

Plaintiff has not filed any proof of appeal since the September 14, 2012, hearing. However, on September 26, 2012, this Court learned that Plaintiff had filed a letter to Chief Judge Amon on August 30, 2012 (Document #13-1), which requested that this matter be reassigned. In that letter, Plaintiff implied that she had appeared before this Court on a prior occasion and that she had a "conflict" with this Court "due to the discrimination on the previous matter and the denial of goods and services." Plaintiff specifically noted that this Court had denied her request to communicate with this Court via fax, alleging that this was a "Special Accommodation" which she had been granted by other courts in light of her alleged disability. Plaintiff implied that this Court's decision was not only contrary to the ADA but also evidence of bias, stating "[i]t is crucial that a non biased Judge review this matter."

11

## DISCUSSION

### *Recusal*

Although Plaintiff has never specifically requested that this Court recuse itself, this Court will, in an abundance of caution, construe Plaintiff's letter to Chief Judge Amon as a motion for recusal. Accordingly, this Court will address the recusal issue before addressing Plaintiff's motion for injunctive relief.

Section 455(a) of Title 28 of the United States Code provides that "[a]ny . . . judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In addition, section 455(b) provides that a judge "shall also disqualify himself . . . (1) [w]here he has a personal bias or prejudice concerning a party . . . ." For purposes of this statute, however, "personal bias means prejudice based on 'extrajudicial' matters." *United States v. Colon*, 961 F.2d 41, 44 (2d Cir. 1992). Similarly, "earlier adverse rulings, without more, do not provide a reasonable basis for questioning a judge's impartiality." *Id.* (citing *Schiff v. United States*, 919 F.2d 830, 834 (2d Cir. 1990)); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

"Recusal motions are committed to the sound discretion of the district court." *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007) (*per curiam*). In ruling on such motions, "judges 'must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision.'" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) (quoting H.R.Rep. No. 1453, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 6351, 6355). "A judge is as much obliged not

12

to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

In her letter to Chief Judge Amon, Plaintiff asserts that she has a "conflict" with this Court and states that it is "crucial that a non biased judge review this matter." However, Plaintiff's allegations of bias rest solely on the fact that this Court has ruled against her in the past. In particular, Plaintiff argues that this Court violated the ADA, the Rehabilitation Act, and Plaintiff's Constitutional rights by denying her permission to file by fax, asserting that she has been granted this privilege "in every court except this court and the Judge on this matter."

In fact, Plaintiff has been denied permission to fax by several judges in this district. *See In re Carolyn Schenk*, No. 10-MC-403 (RJD), slip op. at 1 (E.D.N.Y. June 30, 2010) (Plaintiff denied permission to fax by Deaire, Ch. J.); *Schenk v. City of New York*, No. 08-CV-914 (SLT)(LB), slip op. at 1-2 (E.D.N.Y. Oct. 21, 2009) (order of Bloom, M.J., denying Plaintiff permission to fax because "Plaintiff has amply demonstrated that she can mail her submissions to the Court."). However, even assuming that Plaintiff were correct, the fact that this Court has ruled against Plaintiff in the past would not suffice to establish a basis for recusal. *See Colon*, 961 F.2d at 44. Plaintiff, who does not even allege prejudice based on "extrajudicial" matters, has no other basis for alleging that this Court is biased or impartial.

Moreover, this Court's prior rulings against Plaintiff are not reflective of a lack of impartiality, but based solely on the law. Plaintiff was not permitted to submit papers by fax because she offered no evidence of her "disability," and no evidence that the faxing accommodation is related to this disability. Indeed, Plaintiff has amply demonstrated that her disability did *not* prevent her from filing her papers by mail in this case by mailing three replies

in support of her motion for injunctive relief within a week, notwithstanding the fact that this Court's Order to Show Cause did not even require any such submissions. In addition, Plaintiff's August 30, 2012, letter to Chief Judge Amon implies that Plaintiff's request had pecuniary motivations, stating that Plaintiff is "a poor person" with "zero income to even spend on mailing etc."

For these reasons, this Court sees no basis for recusal. Accordingly, this Court will not recuse itself and will proceed to adjudicate Plaintiff's motion for preliminary injunctive relief.[5]

*Injunctive Relief*

"[A]n injunction is an equitable remedy that does not issue as of course." *Amoco Prod. Co. v. Vill. Of Gambell, Alaska*, 480 U.S. 531, 542 (1987). "The basic requirements to obtain injunctive relief have always been a showing of irreparable harm and the inadequacy of legal remedies." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)). Accordingly, "injunctive relief is generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted." *Id.*

Similarly, "a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990);*

---

[5]Although Plaintiff does not mention it in her submissions, this Court is aware that Plaintiff has filed a Complaint of Judicial Misconduct or Disability with the United States Court of Appeal for the Second Circuit in connection with this litigation. However, "[t]he mere filing of a complaint of judicial misconduct is insufficient to require a judge to step down from further handling of a case." *Boatswain v. United States*, No. 10–CV–711, 2010 WL 3521917, at *1 (E.D.N.Y. Sept. 1, 2010) (quoting *U.S. ex rel. Fortier v. Winters*, No. 00 C 7058, 2007 WL 118225, at *2 (N.D.Ill. 2007)); *see also Flemming v. City of New York*, No. 02 CV 6613, 2006 WL 898081, at *6 (E.D.N.Y. Mar.31, 2006).

*D.D. v. New York City Bd. of Educ.*, CV-03-2489 (DGT), 2004 WL 633222, at *23 (E.D.N.Y. Mar. 30, 2004). To obtain a preliminary injunction, the moving party must show, in addition to irreparable harm, either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). Motions for preliminary injunctions are "frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65." 11A C.Wright & A. Miller, *Fed. Practice & Proc.*, § 2949 (2004); *see, e.g.*, *McGillicuddy v. Laidlaw, Adams & Peck, Inc.*, No. 88 Civ. 4928, 1995 WL 1081307, at *12, n. 19 (S.D.N.Y. Aug. 14, 1995) (summarily denying an application for preliminary injunctive relief where the movant's papers failed to demonstrate a basis for granting "this extraordinary remedy").

In this case, Plaintiff (1) has an adequate remedy at law and (2) cannot establish either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation. First, Plaintiff is principally seeking a mandatory injunction ordering the SSA to restore Plaintiff's SSI benefits pending resolution of this action. The Notice, which advised Plaintiff that her SSI would be discontinued as of July 2012, also advised Plaintiff of available remedies. Specifically, the Notice not only informed Plaintiff that she had 60 days from the day after she received the Notice in which to file a written appeal, but also informed her that her benefits would not be stopped if the written appeal was received within 10 days from the day after she received the Notice.

Although Plaintiff states that she has filed many appeals, she has provided no evidence that she filed an appeal from the June 8 Notice that complied with the requirements set forth in the Notice. The Notice provided that such appeals were to be filed in writing, using the "Request for Reconsideration" form, SSA-561-U2. Plaintiff has provided copies of "Request for Reconsideration" forms, but one of these forms is entirely illegible, Third Reply at 14, and the other is largely illegible except for the date: 5/24. *Id.* at 13. Plaintiff has also provided a "Request for Hearing by Administrative Law Judge" form, possibly dated August 22, 2012, which states:

> I have complied w/ all requests. All accts were closed & under 2,000. I asked for several appeals and reconsid. - ignored.

*Id.* at 12. Although this form may relate to the June 8 Notice, it does not specifically identify the SSA determination to which it relates, and bears a name and social security that are written in such a way as to be entirely illegible.[6]

Plaintiff has never represented that this "Request for Hearing by Administrative Law Judge" relates to the Notice. To the contrary, Plaintiff has indicated that she never received the June 8 Notice by writing "I did not get this" on a copy of that Notice which is included in the Third Reply. Indeed, the copy of the Notice included in Plaintiff's papers was faxed from SSA on September 6, 2012, at the same time as the copy of the Notice appended to defendants' Response.

---

[6]Although Plaintiff alleges that a wrist injury rendered her incapable of writing her name or social security number in a legible manner, this allegation is belied by the fact that most other portions of the document are completely legible. Plaintiff's address and telephone number, for example, are written clearly, with the digits in large, well-formed print. In contrast, the form does not provide Plaintiff's first name, and both her last name and the last six digits of her social security number are written in a tiny indistinct scrawl that makes it impossible to read.

16

Assuming that Plaintiff did not receive a copy of the Notice until she received a copy of the Response dated September 7, 2012, she has until mid-November in which to file her appeal with SSA. At the September 14, 2012, hearing, this Court not only expressly advised Plaintiff of this fact, but noted that Plaintiff's benefits might be automatically restored if she promptly filed a properly completed "Request for Reconsideration" with the SSA. It is unclear whether Plaintiff has ever done so. However, since Plaintiff has an adequate remedy at law, injunctive relief is inappropriate in this case.

Even if Plaintiff did not have an adequate remedy at law, this Court does not have jurisdiction to order the SSA to restore Plaintiff's benefits. In *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 147 (2d Cir. 2007), the Second Circuit identified three possible sources of subject-matter jurisdiction over the SSA: 28 U.S.C. §405(g); 42 U.S.C. §1331; and the federal mandamus statute, 28 U.S.C. §1361. However, Plaintiff does not have a claim under any of these three statutes.

First, section 405(g) of Title 42 of the United States Code specifically provides for judicial review of the Commissioner's decisions relating to SSI claims arising under Title XVI of the Social Security Act. It provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

The United States Supreme Court has held that the final-decision-after-a-hearing requirement is critical to the federal court's grant of subject matter jurisdiction over claims under section 405(g).

17

*See Weinberger v. Salfi*, 422 U.S. 749, 763-64 (1975). In the absence of a final decision after a hearing, a federal court lacks subject matter jurisdiction to entertain a §405(g) claim and such a claim must be dismissed. *Id.*

In this case, no hearing has been held and no final decision has yet been issued. As noted above, there is no evidence that Plaintiff ever filed an appeal from the June 8 Notice. Even if she did, Plaintiff herself represents that her appeals have been ignored, implying that no hearing has yet been held. Accordingly, this Court does not have subject-matter jurisdiction under §405(g).

Second, 28 U.S.C. §1331 provides that federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Although Plaintiff's Complaint does not specifically allege a basis for jurisdiction, it alleges violations of Title II of the ADA, section 504 of the Rehabilitation Act, and various provisions of the United States Constitution. Complaint at 1. These allegations imply that Plaintiff is attempting to bring this action under 28 U.S.C. §1331.

Section 405(h) of Title 42 of the United States Code, however, prevents Plaintiff from frustrating the exhaustion requirements of §405(g) by bringing suit under §1331. Section 405(h) provides, in pertinent part, that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." To be sure, Section 405(h) does not bar suit where there is no appropriate administrative forum. *Binder & Binder PC v. Barnhart*, 399 F.3d 128, 130 (2d Cir. 2005) (§405(h) "does not apply. . . where application of §405(h) would not simply channel review through the agency, but would mean no review at all.") In this case, though, there was an avenue for administrative review.

18

Third, 28 U.S.C. §1361 provides that federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, mandamus, like injunctive relief, is an equitable remedy and can only be granted where the party seeking issuance of the writ can establish, among other things, that he or she has "no other adequate means to attain the relief he [or she] desires." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004); *In re City of New York*, 607 F.3d 923, 932-33 (2d Cir. 2010); *see also Heckler v. Ringer*, 466 U.S. 602, 626 (1984) (mandamus "provide[s] a remedy for a petitioner only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty"). As noted above, Plaintiff has not exhausted all other avenues for relief and has not established that the SSA has a clear, nondiscretionary duty to restore her benefits. Although Plaintiff claims to have contacted at least one of the financial institutions identified by the IRS and ascertained that there were "zero accounts that matched the information provided" to the SSA by the IRS, First Reply at 3, she has not provided any documentation from the financial institutions to support her claims. Accordingly, Plaintiff cannot proceed under 28 U.S.C. §1361.

Since this Court does not appear to have jurisdiction to order the SSA to restore Plaintiff's benefits, Plaintiff is not likely to succeed on the merits in this action. Plaintiff also has not demonstrated sufficiently serious questions going to the merits to make them a fair ground for litigation or that the balance of hardships tips decidedly in her favor. Defendants assert that Plaintiff's benefits were discontinued solely because the SSA does not have documents from the financial institutions that would establish that Plaintiff's accounts were either empty or closed. Plaintiff notes that she received letters from the SSA stating that she provided the required

19

information. However, Plaintiff has not provided this paperwork to the Court and candidly admitted at the September 14, 2012, hearing that she never obtained such documentation from any financial institutions.

Had Plaintiff produced the paperwork, this Court might have been able to resolve this matter informally. By not producing the paperwork or following this Court's exhortations to file an immediate appeal from the June 8 Notice, Plaintiff has effectively persuaded this Court that her contentions are without merit. Accordingly, Plaintiff's motion for preliminary injunctive relief is denied.

## *CONCLUSION*

For the reasons stated above, Plaintiff's motion for a preliminary injunction directing Defendants to resume her SSI is denied. In addition, since Plaintiff has not advanced a factual or legal basis for ordering Defendants to "permanently move the file of the . . . plaintiff to another venue," or to afford Plaintiff any particular accommodations, no other injunctive relief will be granted.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: October 18, 2012
Brooklyn, New York