UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CAROLYN SHENK,[1]

                 Plaintiff,

        -against-                               **MEMORANDUM AND ORDER**

SOCIAL SECURITY ADMINISTRATION,                12-CV-4370 (SLT)
MICHAEL ASTRUE, MISS BIONDADILLDO,
FRANCIS, CABAN, CHAN, *et al.*,

                 Defendants.
----------------------------------------------------------------x
**TOWNES, United States District Judge:**

        Plaintiff Carolyn Shenk ("Plaintiff"), proceeding *pro se*, brings this action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12101 *et seq.*; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; and other unspecified "disabilities laws" against the Social Security Administration ("SSA"); former SSA Commissioner, Michael Astrue; and four SSA employees (collectively, "Defendants"). Defendants now move to dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is granted and this action is dismissed.

## *BACKGROUND*

        On August 24, 2012, Plaintiff faxed a two-page complaint (the "Complaint") and other submissions relating to the instant action to the Clerk's Office for the United States District Court for the Eastern District of New York. Plaintiff's submissions included (1) a letter dated August 20, 2012, addressed to Chief Judge Carol Amon, requesting permission to commence a

---

      [1] Although Plaintiff has used the surname "Schenk" in her application for SSI benefits and in certain documents filed in this case, *see*, *e.g.*, Letter to United States Chief Justice Carol Amon from Carolyn Schenk, dated Aug. 20, 2012, the Complaint refers to Plaintiff as Carolyn Shenk. Accordingly, this Court will hereafter use the name Shenk, rather than Schenk.

new action via facsimile and (2) a motion for a temporary restraining order and preliminary injunction, along with two proposed orders to show cause. By order dated August 30, 2012, Chief Judge Amon granted Plaintiff permission to commence this action via facsimile. The action was then assigned to this Court.

In a memorandum and order dated October 18, 2012, and filed October 19, 2012 (the "Prior "M&O"), this Court denied Plaintiff's motion for preliminary injunctive relief. *See Shenk v. Social Sec. Admin.*, No. 12-CV-4370 (SLT), 2012 WL 5196783 (E.D.N.Y. Oct. 19, 2012). Familiarity with the Prior M&O is assumed. However, for the convenience of the reader, this Court will repeat its description of the Complaint, which originally appeared in the Prior M&O.

*Plaintiff's Complaint*

As noted in the Prior M&O, Plaintiff's Complaint is unclear, but one can deduce the following facts from the allegations in the pleading and the three exhibits attached thereto. For some time prior to 2012, Plaintiff had been receiving Supplemental Security Income ("SSI") benefits from the SSA. Early in 2012, the SSA contacted Plaintiff and threatened to suspend her SSI benefits unless Plaintiff provided certain information needed to re-evaluate Plaintiff's SSI claim. Plaintiff provided the SSA with "[e]verything they needed." Complaint at 1. In late March and early April 2012, Plaintiff received correspondence from the SSA confirming that the agency had received the necessary information and was restoring Plaintiff's SSI benefits.

A few months later, however, Plaintiff's SSI benefits were discontinued. Plaintiff did not receive SSI payments due at the beginning of July and August 2012. *Id.* at 1. The Complaint implies that Plaintiff did not receive adequate notice before her benefits were discontinued, alleging that Plaintiff received a letter "written over in some 'serial killer' RED BOLD CRAZY,

'SERIAL KILLER' THREATENING MARKER," but "not the official termination or stopping which . . . Plaintiff never received." *Id*. at 2 (emphasis in original).

The Complaint charges that two of the four SSA employees who are named as defendants herein—Francis and Biondadilldo—were responsible for writing the threatening red messages and for the decision to discontinue Plaintiff's benefits "without merit and just cause." *Id*. In addition, the Complaint alleges that Plaintiff was "completely ignored and abused" by Defendants; that Biondadilldo, Francis, and another SSA employee—defendant Caban—all screamed at her; that defendant Chan ignored Plaintiff's requests for a return telephone call; and that Plaintiff was subjected to "harassment and excessive questioning." *Id.* at 1-2.

Although the Complaint specifically alleges that Plaintiff is "filing this complaint for violations of the Americans with Disabilities Act, 1990 Title II . . . and Section 504 of the Rehabilitation Act and all disability laws collectively," *id.* at 1, the only act committed by defendants which is specifically alleged to have violated the ADA and other disability laws is the sending of the threatening red messages. The Complaint alleges that these messages were sent to "[s]care, [i]ntimidate and threaten the disabled homebound plaintiff in violation of the Americans with Disabilities Act, City and State and federal disability [l]aws collectively." *Id*. at 2 (internal quotations omitted, brackets added). The Complaint also mentions the ADA and Rehabilitation Act in a notation in the caption, immediately below the jury trial demand, which requests a "Special Accommodation hearing" and several "Special Accommodations": "auxiliary aides, faxing, telephone conference pursuant to ADA Rehab . . . ." *Id*. at 1. However, the Complaint appears to request those accommodations from the Court, stating:

> Disabled plaintiff . . . has a wrist injury at present so please
> provide a special accommodation . . . [S]he is requesting

> Telephone and faxing as this is her alternative method that she
> needs for her disability and phone Conference and any other
> auxiliary please keep this in mind, thank you.

*Id*. at 2. Nothing in the Complaint suggests that Plaintiff requested "Special Accommodations" from the SSA or that these requests were denied.

The Complaint also alludes to violations of Plaintiff's "Civil and human rights" and "[o]bstruction of justice," as well as "violations of the United States Constitution, Due Process, 5th and 14th amendments and The New York Constitution." *Id*. at 1. However, the pleading does not explain how the acts or omissions alleged in the Complaint violated Plaintiff's Constitutional, civil or human rights or constituted "obstruction of justice." In addition, the Complaint does not include an *ad damnum* clause or request any relief other than an injunction directing the SSA to reinstate her SSI benefits.

*Defendants' Motion to Dismiss*

Defendants now move to dismiss the Complaint. In their Memorandum in Support of the Motion to Dismiss ("Defendants' Memo"), Defendants advance two sets of arguments. First, Defendants move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims for SSI benefits. Second, Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss disability claims suggested by the Complaint.

Defendants' first set of arguments do not rely on allegations contained in the Complaint or the exhibits thereto, but on facts set forth in the Declaration of Julio Infiesta, the Assistant Regional Commissioner for that Region of the SSA which encompasses New York. The Infiesta Declaration states, *inter alia*, that an SSI beneficiary's eligibility for SSI is reviewed periodically in a process called "redetermination." Infiesta Declaration, ¶ 3. When a beneficiary fails to

comply with the SSA's request for information or when the information received by the SSA is insufficient to determine eligibility or the amount of SSI payments, the SSA sends the beneficiary a "notice of suspension of payment." *Id*., ¶¶ 4-5. The beneficiary has a right to appeal the SSA's decision to suspend benefits through an administrative review process. *Id.*, ¶¶ 6-7. If, after completing the administrative review process, a beneficiary is dissatisfied with the SSA's "final decision," the beneficiary may seek review of that final decision in federal court. *Id*.

According to Infiesta, Plaintiff failed to provide information regarding certain financial accounts which was necessary to redetermination. *Id*., ¶¶ 16-18. On June 8, 2012, the SSA sent Plaintiff a notice advising her that her benefits would be suspended in July 2012. *Id*., ¶ 19. Although that notice advised Plaintiff that she could appeal the suspension, Plaintiff failed to engage in the administrative review process. *Id.*, ¶¶ 19-20. As a result, Plaintiff's benefits were suspended effective July 2012. *Id.*, ¶ 20.

Plaintiff ultimately commenced the administrative review process, but only after she had filed this action and been denied injunctive relief. *Id.*, ¶¶ 21-23. On October 23, 2012, Plaintiff submitted a "Request for an Administrative Law Judge Hearing," which the SSA construed as a request for reconsideration. *Id.*, ¶ 23. Thereafter, Plaintiff provided the financial account information which the SSA had requested. *Id.* By letter dated December 12, 2012, the SSA informed Plaintiff that her SSI benefits would be reinstated as of July 2012. *Id.* Thereafter, the SSA returned Plaintiff to "full pay status" and paid Plaintiff "$4710.00 in retroactive benefits." *Id.*, ¶¶ 25-26.

Although virtually none of the information contained in the Infiesta Declaration and the eleven exhibits thereto is contained in the Complaint, Defendants argue that this Court can refer to evidence outside the pleading in order to resolve the following two jurisdictional arguments. First, Defendants argue that this Court lacks subject-matter jurisdiction to review SSA's decision to suspend Plaintiff's SSI benefits. Defendants note that 42 U.S.C. § 405(g) contains a limited waiver of sovereign immunity, granting federal courts jurisdiction to review a "final decision" of the Commissioner of SSA under certain circumstances. Defendants maintain that Plaintiff never exhausted the administrative review process and, accordingly, never obtained a "final decision" of the Commissioner relating to her SSI benefits.

Second, Defendants argue that this Court lacks jurisdiction because that Plaintiff's claims relating to her SSI benefits are moot. In making this argument, Defendants principally rely on Exhibit 11 to the Infiesta Declaration: the December 12, 2012, letter in which the SSA informed Plaintiff that, upon her request for reconsideration, the SSA had decided to continue her SSI benefits.

Defendants' second set of arguments focus on Plaintiff's disability claims. First, noting that the Complaint specifically alleges a violation of Title II of the ADA, Defendants argue that "Title II does not include the federal government, which is prohibited from discrimination in the provision of services by Section 504 of the Rehabilitation Act." Defendant's Memo at 15. Second, asserting that Plaintiff "appears to be alleging that the SSA ignored her disability and suspended her SSI benefits without providing special accommodations such as the ability to use a facsimile machine to present her arguments," *id.*, Defendants argue that the Complaint fails to state a claim under Section 504 of the Rehabilitation Act. Third, Defendants imply that if

Plaintiff is claiming that she was discriminated against by an SSA employee, she is compelled to pursue an administrative process prior to bringing that claim.

Along with their motion to dismiss, Defendants served Plaintiff with a notice pursuant to Local Civil Rule 12.1. That notice apprised Plaintiff that the motion referred to matters outside of the pleadings and noted that this Court might construe the motion as a motion for summary judgment. Although the notice expressly warned Plaintiff that the Complaint could be dismissed if she did not respond to the motion by sworn affidavits or other evidence, Plaintiff has not responded to Defendants' motion.

## *DISCUSSION*

In moving to dismiss this action, Defendants move to dismiss Plaintiff's claims for SSI benefits pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and Plaintiff's disability claims pursuant to Rule 12(b)(6). The statutory grounds alleged are significant because of differences in what documents can be considered upon motions pursuant to Rules 12(b)(1) and 12(b)(6). *See State Employees Bargaining Agent Coalition, v. Rowland*, 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

A claim is "properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When jurisdiction is challenged, the plaintiff bears "the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). When "the case is at the pleading stage and no evidentiary hearings have been held . . . [a court] must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*,

558 F.3d 137, 143 (2d Cir. 2009) (internal citations and quotations omitted; brackets and ellipses added). However, "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *Rowland*, 494 F.3d at 77, n. 4 (2d Cir. 2007).

In contrast, when considering a Rule 12(b)(6) motion, materials outside the four corners of the complaint are "generally not considered . . . unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc*., 987 F.2d 142, 150 (2d Cir. 1993). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even if the complaint does not, the court must grant leave to amend the complaint if a liberal reading of the pleading "gives any indication that a valid claim might be stated." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Because Plaintiff is proceeding *pro se*, her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)

(quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

*The Claims relating to SSI Benefits*

In their first set of arguments, Defendants move pursuant to Rule 12(b)(1) to dismiss Plaintiff's claims for SSI benefits for lack of subject-matter jurisdiction on two grounds. First, Defendants argue that this Court lacks jurisdiction absent a "final decision" from the Commission of the SSA relating to Plaintiff's SSI benefits. Second, Defendants assert that this Court lacks jurisdiction because the SSA ultimately issued a favorable determination, causing Plaintiff's SSA claims to become moot.

The first of these arguments may not actually be a motion pursuant to Rule 12(b)(1). While 42 U.S.C. § 405(g) "bars judicial review of any denial of a claim of disability benefits until after a 'final decision' by the Secretary [now, the Commissioner] after a 'hearing,'" *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) (bracketed material added), the Supreme Court has held that:

> the "final decision" requirement embodied in that section "consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be waived by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary."

*Bowen v. City of New York*, 476 U.S. 467, 482-83 (1986) (quoting *Eldridge*, 424 U.S. at 328). Accordingly, dismissal for failure to exhaust administrative remedies may not be appropriate under Rule 12(b)(1), and consideration of matters outside the pleadings may be improper, unless this Court (1) treats the motion as a motion for summary judgment and gives all parties a

9

reasonable opportunity to present evidence that is pertinent to that motion or (2) finds that the *pro se* plaintiff was provided with "unequivocal" notice that the instant motion might be treated as one for summary judgment and notice of the nature and consequences of summary judgment. *See Escalera v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 4, 5 n.1 (2d Cir. 2011) (summary order).

Rather than convert this motion to a motion for summary judgment or address the question of whether the notice pursuant to Local Civil Rule 12.1 constituted "unequivocal notice," this Court will turn to Defendant's second ground: that Plaintiff's SSA claims were rendered moot by the SSA's decisions to restore her SSI benefits. This mootness argument is properly brought under Rule 12(b)(1). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks and brackets omitted). Thus, a district court can dismiss a moot claim for lack of subject-matter jurisdiction upon a motion pursuant to Fed. R. Civ. P. 12(b)(1). *See*, *e.g.*, *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

In this case, the evidence set forth in the Infiesta Declaration establishes that Plaintiff's claim for SSA benefits is moot. Although Plaintiff's complaint does not include an *ad damnum* clause, it is readily apparent that the Complaint principally seeks reinstatement of Plaintiff's SSI benefits, which were discontinued as of July 2012. In his declaration, Infiesta states that "plaintiff's SSI payments were reinstated as of July 2012," that Plaintiff "received $4710.00 in retroactive benefits," and that she is "currently in full pay status for her SSI benefits." Infiesta Declaration, ¶¶ 23, 25-26. Plaintiff, who has not responded to Defendant's motion, has not adduced any evidence to controvert Infiesta's representations. Accordingly, Defendant's motion to dismiss Plaintiff's claims relating to her SSI benefits is granted.

*Plaintiff's Remaining Claims*

In their second set of arguments, Defendants move to dismiss Plaintiff's remaining claims pursuant to Rule 12(b)(6) for failure to state a claim. First, Defendants argue that Title II of the ADA does not apply to the federal government. Second, asserting that Plaintiff "appears to be alleging that the SSA ignored her disability and suspended her SSI benefits without providing special accommodations such as the ability to use a facsimile machine to present her arguments," Defendants' Memo at 15, Defendants argue that the Complaint fails to state a claim under Section 504 of the Rehabilitation Act. Third, Defendants imply that if Plaintiff is claiming that she was discriminated against by an SSA employee, she is compelled to pursue an administrative process prior to bringing that claim.

Defendants' first argument is entirely correct. "Title II of the ADA is not applicable to the federal government." *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) (per curiam). Accordingly, to the extent that Plaintiff is seeking to sue the SSA under Title II of the ADA, that claim is dismissed.

With respect to Defendants' second argument, this Court agrees with Defendants that the Complaint fails to state a claim under the Rehabilitation Act. However, this Court does not agree with Defendants' characterization of Plaintiff's Rehabilitation Act claim. The Complaint does not allege that *Defendants* denied her any "special accommodations" that she needed to present her claim. Rather, the Complaint requests that the *Court* provide various "Special Accommodations," including the ability to communicate with the Court via "[t]elephone and faxing." Complaint at 2.

The Complaint expressly alleges that Defendants violated the ADA and other disability laws (including the Rehabilitation Act) by the sending of the threatening red messages. Specifically, the Complaint alleges that these messages were sent to "[s]care, [i]ntimidate and

11

threaten the disabled homebound plaintiff in violation of the Americans with Disabilities Act, City and State and federal disability [l]aws collectively." *Id*. at 2 (internal quotations omitted, brackets added). However, while the Complaint alleges that Defendants knew that Plaintiff is "[h]omebound and disabled," the Complaint does not allege any facts to suggest that her disability prompted Defendants to engage in acts which allegedly violated the Rehabilitation Act. Accordingly, this Court concludes that the Complaint fails to state a claim under Title II of the ADA or the Rehabilitation Act, and need not address Defendants' third argument relating to administrative exhaustion of discrimination claims.

This Court notes, however, that Plaintiff's Complaint does not allege only violations of the ADA and Rehabilitation Act. The Complaint also alludes to violations of Plaintiff's "Civil and human rights," "Obstruction of Justice," and "violations of the United States Constitution, Due Process, 5th and 14th amendments and The New York Constitution." The facts alleged in the Complaint do not suggest a violation of Plaintiff's civil or human rights, even assuming that violations of human rights create a federal cause of action. *See Bey v. New York*, No. 11–CV–3296 (JS)(WDW), 2012 WL 4370272, at \*7 (E.D.N.Y. Sept. 21, 2012) (no private right of action under international treaties, the United Nations' Universal Declaration of Human Rights, or provisions of the United Nations' Charter). Moreover, "obstruction of justice 'is a criminal charge that does not provide a private cause of action.'" *McCain v. Buffalo Wild Wings*, No. 1:11-cv-143-jgm, 2013 WL 6825098, at \*3 (D.Vt. Dec. 23, 2013) (quoting *De Haven v. Schwarzenegger*, 123 Fed. Appx. 287, 289 (9th Cir. 2005)).

While the facts alleged in the Complaint suggest that Plaintiff may be seeking to raise a due process claim based on the failure to provide an evidentiary hearing prior to the termination of her SSI benefits, *see Goldberg v. Kelly*, 397 U.S. 254, 264 (1970), Plaintiff's Complaint

requests only injunctive relief, not money damages. Since Plaintiff's benefits have been reinstated and she has received retroactive benefits, this due process claim is moot. Even a liberal reading of the complaint gives no indication that any other valid, actionable Constitutional claim might be stated.

## *CONCLUSION*

For the reasons set forth above, Defendants' motion to dismiss this action is granted. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case. The Court certifies that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 28, 2014
       Brooklyn, New York